# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 25-CR-20296-SKD-EAS |
| | ) | |
| ASIM GHAFOOR, | ) | Hon. Susan K. DeClercq |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM

**TABLE OF CONTENTS**

I.     INTRODUCTION ..............................................................1

II.    FACTUAL AND PROCEDURAL HISTORY ...........................1

  A.   Defendant's High-Profile Law Practice ...............................1

  B.   SSF Accuses the Defendant of Embezzlement ......................3

  C.   International News of Ghafoor's Arrest and Conviction in the UAE ............3

  D.   The Instant Guilty Plea and Bar Disciplinary Proceedings ............5

III.   SENTENCING FACTORS UNDER 18 U.S.C. § 3553 .................6

  A.   3553(a)(4), the Sentencing Guidelines: Defendant's Conduct Falls Within a Range of 12 to 18 Months of Incarceration....................7

  B.   3553(a)(1), the Nature and Circumstances of the Offense ............8

     1.   False Forms 990, Returns of Organization Exempt from Income Tax ....9

     2.   False Personal Tax Returns, Forms 1040: Ghafoor failed to report his income from SSF and his law firm.........................12

     3.   FBARs: Ghafoor failed to file FBARs which would show his income earned abroad...........................................13

  C.   3553(a)(1), the History and Characteristics of the Defendant.....................13

  D.   3553(a)(2), General Deterrence ......................................15

     1.   This case will likely attract significant international media attention. ..15

     2.   General deterrence is especially important in tax prosecutions, which are few in number compared to the number of violations. ....................15

  E.   3553(a)(2), Specific Deterrence .....................................18

  F.   3553(a)(6), the Need to Avoid Unwarranted Sentence Disparities..............19

III.   RESTITUTION ..............................................................22

IV.    CONCLUSION................................................................22

## I.     INTRODUCTION

Asim Ghafoor is a Maryland lawyer who took an oath as an officer of the court to uphold the laws of the United States.  He repeatedly violated his oath by filing fraudulent tax returns omitting $4,339,605 in gross receipts and $1,814,634 in net income from his law practice and from his representation of the Syrian Sunrise Foundation ("SSF") charity.  Moreover, this is not the Defendant's first contact with the legal system, as he was accused by SSF of embezzling funds in 2015 and was convicted in the UAE on similar tax evasion charges in 2020.  Ex. 1 and 2.  Despite being in the scrutiny of the public due to his high-profile client list, the Defendant nonetheless repeatedly chose to file fraudulent income tax returns with the IRS.  Given the Defendant's renown and his dishonesty, the need for general and specific deterrence weighs in favor of a custodial sentence.  Therefore, and considering sentences in similar cases, the Government requests that the Court impose a sentence of **12 months' incarceration**.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.     Defendant's High-Profile Law Practice

Defendant Asim Ghafoor was an attorney who lived in Virginia and practiced in Maryland, where he was barred in 1999.  He is also barred in various federal courts.  He was a civil rights attorney who represented clients, including foreign governments, domestically and internationally.  Among the Defendant's former clients was the government of Sudan.  He also represented the Al Haramain

Islamic Foundation, which in 2008 was designated as a terrorist organization for having provided financial and material support to al Qaida. *See Treasury Designates Al Haramain Islamic Foundation*, U.S. Dep't of the Treasury (June 19, 2008), *available at* https://home.treasury.gov/news/press-releases/hp1043.

From 2013 to 2016, Ghafoor used at least nine different foreign and domestic bank accounts, including in the United Arab Emirates and the Sudan. The primary funding of these accounts came from clients of Ghafoor's law firm. He also used the accounts receiving business income to fund personal expenses. According to witnesses, Ghafoor was often paid by clients in cash and dealt in cash extensively.

In operating his law practice, Defendant engaged in a years-long scheme to underreport his income. PSR 5 ¶¶ 8-10. The investigation into the Defendant began with an investigation into false tax returns for a tax-exempt organization, SSF, which was founded in Michigan 2011 with the stated mission to provide relief to Syrian refuges throughout the world. Ghafoor was the incorporator of SSF, he prepared and filed SSF's application for charitable status with the IRS, received consulting fees, and assisted SSF in the transfer of a significant amount of donations to foreign third-parties.

Ghafoor self-prepared his personal income tax returns, Forms 1040, jointly with his wife. He did not provide any documentation for the sources of his

income.  He also claimed expenses for travel and food but did not provide any detail to support the expenses.

### B.    SSF Accuses the Defendant of Embezzlement

In August 2015, an officer of SSF sent the Defendant an email alleging that he owed the organization more than $950,000 in Ghafoor controlled on behalf of the organization.  Ex. 2, at 1.  In September 2015, Ghafoor wrote SSF a check that bounced due to insufficient funds.  Ex. 2, at 2-3.  Ghafoor submitted a partial repayment of the debt, Ex. 2, at 6-7, but did not pay the balance.  As a result, Ghafoor and SSF entered into a contract where Ghafoor was to pay $565,000 in specified installments or else SSF could foreclose on Ghafoor's house.  Ex. 2, at 10-35.  Ghafoor paid the first two installments late and missed the third payment altogether.  Ex. 2, 36-44.  As a result, SSF foreclosed on Ghafoor's house for the remaining balance of $152,359.92.  Ex. 2, at 45-61.

### C.    International News of Ghafoor's Arrest and Conviction in the UAE

As part of its investigation into Ghafoor's foreign bank accounts, the Government sent MLAT requests, including to the United Arab Emirates, which the UAE acknowledged receipt of in November 2020.  Based on the allegations in this request, the UAE opened a parallel money laundering investigation into Ghafoor.  In November 2021, the UAE sent a response to the Government stating, among other things, that it found evidence of transactions in the Defendant's

3

accounts that were inconsistent with the purposes for opening the accounts.  *See* Ex. 1, at 1, UAE Response to USA's MLAT (highlighted portion).  The UAE also included bank statements regarding Ghafoor's financial accounts reflecting millions of dollars in transactions.  *See* Ex. 1, at 3-7.  The UAE noted that the transactions were suspicious because the Defendant "is a non-resident who exchanges a huge amount of foreign currencies in cash through an exchange bureau, while he can do the same with his current bank account(s)," which also has the effect of hiding "the source of the funds."  Ex. 1, at 10.

According to news articles, in May 2022, Ghafoor was convicted *in absentia* of financial crimes in the UAE.  On approximately July 14, 2022, Ghafoor was arrested in Dubai while on his way to Turkey.  PSR 8 ¶ 30.  This caused significant international media attention regarding his arrest.  *See, e.g.*, Allie Malloy, et al., *Ex-Khashoggi Lawyer Sentenced to 3 Years in Prison by UAE Court, State Media Says*, CNN (July 16, 2022), *available at* https://www.cnn.com/2022/07/16/politics/khashoggi-lawyer-detained.  On August 8, 2022, the UAE Embassy issued a statement stating:

> Ghafoor committed tax evasion and money laundering by executing at least $4.9 million in international financial transfers through the UAE banking system. The transfers were executed through multiple bank accounts that he opened with the intent to conceal the origin of the funds from tax authorities. One account was opened as early as 2013 and another was closed in 2020 after suspicious activity was detected. While Ghafoor was not a resident of the UAE, dozens of cash deposit and debit transactions were made on his accounts through ATMs based

in the UAE by an unidentified third party using Ghafoor's bank cards. The investigation established evidence that the transfers on the accounts were inconsistent with the original purpose for which they were opened with the intent to conceal or disguise the nature and origin of the funds obtained from illegal sources.

Press Release, *UAE Embassy Statement on Case of Asim Ghafoor*, Embassy of the United Arab Emirates, Washington, DC (Aug. 8, 2022). UAE Authorities confiscated approximately $4.9 million that Defendant "illegally moved through the country." PSR 8 ¶ 30. On August 12, 2022, Ghafoor was released from custody after paying a $1.36 million fine. *Id.*

### D.   The Instant Guilty Plea and Bar Disciplinary Proceedings

On May 20, 2025, Defendant pleaded guilty to an Information charging him with one count of willfully filing a false tax return, Form 1040 for tax year 2016, in violation of 26 U.S.C. § 7206(1). Pursuant to the plea agreement, the parties stipulated to a statement of facts where Defendant agreed that he willfully failed to report income from his law practices, G Law & Co. and the Law Office of Asim Ghafoor, to the IRS, causing a total tax loss of $354,634. ECF No. 5 at 3-4.

On August 5, 2025, the Attorney Grievance Commission of Maryland filed a petition for disciplinary action against the Defendant based on the instant offense and asked the court to order his immediate suspension from the practice of law. *Att'y Grievance Comm'n of Md. v. Ghafoor*, No. SCM-AG-0006-2025 (Md. Aug.

5, 2025).  As of the date of the filing of this sentencing brief (Oct. 14, 2025), the Maryland court has not yet ruled on the motion.

## III.   SENTENCING FACTORS UNDER 18 U.S.C. § 3553

The § 3553(a) factors support the Government's request for a sentence of 12 months' incarceration.  First, regarding the nature and circumstances of the offense, the Defendant failed to report over a million dollars in income from his law practice and a charity, SSF, that he represented before the IRS.  Notably, both SSF and Ghafoor failed to disclose all of the income he received for his representation.  Second, regarding Defendant's history and characteristics, the Defendant was arrested for committing a similar crime in the UAE, he was accused by SSF of embezzlement, and, most importantly, he violated his oath to uphold the law as a lawyer.  Third, regarding general deterrence, this case is necessary to send a message to other would-be violators given that the Defendant is a high-profile lawyer and that there were only eight tax prosecutions in Michigan during 2024.  Fourth, regarding specific deterrence, the Defendant needs adequate deterrence given his repeated filing of fraudulent documents and his failure to remain truthful to the court.  Finally, regarding sentencing disparities, other judges in the District have sentenced similar defendants to periods of around 12 months' incarceration.

Accordingly, considering all factors, a sentence of 12 months incarceration is appropriate.

As a threshold consideration, courts and policymakers have repeatedly emphasized that tax crimes are serious and that sentencing courts need to treat them accordingly.  *See, e.g.*, *United States v. Engle*, 592 F.3d 495, 501 (4th Cir. 2010) (citing U.S.S.G. Ch. 1., Pt. A, introductory cmt. 4(d) (1998)) ("[T]he policy statements issued by the Sentencing Commission make it clear that the Commission views tax evasion as a serious crime and believes that, under the pre-Guidelines practice, too many probationary sentences were imposed for tax crimes.").  Our nation and society depend upon the tax system, and that system in turn depends on individuals and employers honestly reporting their tax liabilities; as one court has put it, "the Federal tax structure is the ultimate honor system." *Turnham v. C.I.R.*, 979 F.3d 1322, 1323 (11th Cir. 2020); *see also Compania General de Tabacos de Filipinas v. Collector of Internal Revenue*, 275 U.S. 87, 100 (1927) (Holmes, J., dissenting) ("Taxes are what we pay for civilized society. . . .").  Tax crimes undermine the integrity of the tax system, just as lies undermine any system built on trust.

## A.    3553(a)(4), the Sentencing Guidelines: Defendant's Conduct Falls Within a Range of 12 to 18 Months of Incarceration.

Pursuant to the plea agreement, the parties stipulated to the following Guidelines calculation:

7

Statute Offense Level:

    *Base Offense Level:*           18

                                 (§§ 2T1.1; 2T4.1(G) – loss greater than $250,000 but less than $550,000)

Total Offense Level:             18

Zero-Point Offender Reduction (§ 4C1.1):    -2

Total:                   16

Assuming, as outlined in paragraph 7.B. of the plea agreement, that Defendant demonstrates to the satisfaction of the Government acceptance of responsibility prior to sentencing, the Government agreed that he should be afforded a further three-point offense level reduction pursuant to U.S.S.G. § 3E1.1(a) and (b).  This would result in an adjusted offense level of 13 and a range of imprisonment of 12 to 18 months.  Pursuant to paragraph 8.B.1. of the plea agreement, the Government agreed to request the low end of Defendant's guidelines range as determined by the Court.

### B.    3553(a)(1), the Nature and Circumstances of the Offense

The Defendant's scheme included at least three facets.  First, false Forms 990 were filed for SSF, which failed to disclose that Ghafoor was receiving substantial income from the donated funds.  Second, Ghafoor failed to disclose income from SSF and other law firm income on his personal income tax returns.

Third, Ghafoor would also fail to file Reports of Foreign Bank and Financial Accounts ("FBAR") that would have shown foreign income.

> 1. <u>False Forms 990, Returns of Organization Exempt from Income Tax</u>

Ghafoor prepared and filed SSF's application for charitable status with the IRS on December 9, 2011.  Ghafoor was listed as the organization's "primary contact."  He was also listed on a Form 2848 Power of Attorney and Declaration of Representative that was include with the application.  On at least two occasions, he corresponded with the IRS on SSF's behalf relating to questions the IRS had about the application.  Specifically, on or about November 5, 2012, the IRS sent a letter to Ghafoor asking about the disposition of donated funds.  In a response, Ghafoor provided a schedule reporting that between January and September 2012, SSF donated $2,828,200 in funds specifically to hospitals, for medicines, to widows and orphans, and Syrian winter relief.

However, bank records for SSF and Ghafoor revealed that between April 2012 and September 2012, SSF sent at least $3,110,000 to Asim Ghafoor via wire transfers.  Ghafoor subsequently sent $1,095,000 through an international money transmission service and $1,160,000 to an individual in Canada.  The Forms 990 that SSF filed did not report the end recipients of the money transmitted through Ghafoor or to the individual in Canada as required by IRS regulations.  This is despite Ghafoor representing to the IRS that the money was sent for specific

purposes.  Therefore, the 2012 to 2017 Forms 990 that SSF filed with the IRS were false in that they failed to report transfers of more than $5,000 of grants or assistance to individuals or organizations outside the United States.  For example, SSF's 2012 Form 990 reported the following:

| | | | |
|---|---|---|---|
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or assistance to any organization or entity located outside the United States? *If "Yes," complete Schedule F, Parts II and IV* | 15 | No |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or assistance to individuals located outside the United States? *If "Yes," complete Schedule F, Parts III and IV* .  .  . | 16 | No |

By falsely answering "no" to these questions, SSF did not include a Schedule F that would have been a more detailed report of the funding of activities outside the United States.  This would have disclosed the funds transferred to Ghafoor that he transferred abroad.

Further, SSF filed a statement of expenses that did not report all of the income received by Ghafoor.  For example, Ghafoor's residence in Ashburn, Virginia, was purchased in April 2014 for $948,500 with a portion of funds derived from SSF accounts.  On April 1, 2014, Ghafoor received 2 checks from SSF totaling $288,400.  He deposited these checks into his law firm's bank account. These funds were comingled with other funds, and on April 28, 2014, used to make an $800,000 down payment on the Ashburn house.  The use of these donated funds by Ghafoor to purchase the Ashburn house was not reported on SSF's 2014 Form 990 filed with the IRS.  Indeed, only the following expenses were reported:

| | | |
|---|---|---:|
| 7 | Other salaries and wages . . . . . | 64,829 |
| 8 | Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) . . . . . | |
| 9 | Other employee benefits . . . . . . . . | |
| 10 | Payroll taxes . . . . . . . . . . . . | 5,122 |
| 11 | Fees for services (non-employees) | |
| a | Management . . . . . . . | |
| b | Legal . . . . . . . . . | 12,512 |
| c | Accounting . . . . . . . . . . . | |
| d | Lobbying . . . . . . . . . . . | |
| e | Professional fundraising services  See Part IV, line 17 | |
| f | Investment management fees . . . . . . . | |
| g | Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) . . . . . | 18,788 |
| 12 | Advertising and promotion . . . . . | 180,584 |
| 13 | Office expenses . . . . . . . | 59,248 |
| 14 | Information technology . . . . . . | |
| 15 | Royalties . . | |
| 16 | Occupancy . . . . . . . . . . . | 165,932 |
| 17 | Travel . . . . . . . . . . . . | 65,000 |
| 18 | Payments of travel or entertainment expenses for any federal, state, or local public officials . . . . . . . | |
| 19 | Conferences, conventions, and meetings . . . . . | 1,249 |
| 20 | Interest . . . . . . . . . . . | |
| 21 | Payments to affiliates . . . . . . . . | |
| 22 | Depreciation, depletion, and amortization . . . . . . | 472 |
| 23 | Insurance . . . . . . . . . . . . . | 3,528 |
| 24 | Other expenses  Itemize expenses not covered above (List miscellaneous expenses in line 24e  If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O ) | |
| a | Bank and Credit Card Fees | 20,722 |

Therefore, the Forms 990 had the effect of concealing income that Ghafoor

received from SSF.[1]

---

[1] Ghafoor did not sign the Forms 990, which were all subscribed by other officers of SSF. But none of the forms indicated that they used a paid preparer.  It is possible—even likely—that Ghafoor prepared these returns given his status as SSF's representative before the IRS and the fact that he prepared his own false returns.  However, even if he did not prepare the Forms 990 himself, given that

(continued...)

2.    <u>False Personal Tax Returns, Forms 1040: Ghafoor failed to report his income from SSF and his law firm.</u>

Ghafoor filed Forms 1040 jointly with his wife for 2012, 2013, 2015, and 2016, but did not file a tax return for 2014.  The primary source of reported income was from his law practice, which he reported on a Schedule C each year.

The IRS calculated the unreported business income by looking at his nine different business and international bank accounts and the SSF bank accounts over which he had signature authority.  For example, in 2013, Ghafoor received around $400,000 for representing the government of Sudan, part of which was not reported on his tax return.  And in 2014, Ghafoor opened a Branch Bank & Trust account in SSF's name over which he had sole signature authority.  Ghafoor deposited approximately $360,000 from closed SSF bank accounts, from which he transferred to his business and personal bank accounts.  Part of this was then used to fund approximately $130,000 in miscellaneous personal expenses.

During plea negotiations, the Government also credited the defendant with $2,518,099 in unclaimed deductions that were provided by the Defendant's attorney. The total unreported income and tax calculations are:

---

Ghafoor was SSF's authorized representative before the IRS, he should have ensured that SSF made accurate disclosures, including of funds that he personally benefited from.

12

| Tax Year | Reported Total Income | Actual (Reported + Unreported) Gross Receipts | Additional Deductions Provided by Attorney | Net Actual Total Income | Tax Loss |
|---|---|---|---|---|---|
| 2012 | $95,641 | $976,799 | $512,575 | $464,224 | $122,219 |
| 2013 | $334,860 | $775,104 | $417,757 | $357,347 | $13,339 |
| 2014 | Did Not File | $1,441,608 | $1,176,185 | $265,423 | $70,167 |
| 2015 | $150,000 | $934,956 | $392,774 | $542,182 | $148,189 |
| 2016 | $166,650 | $211,138 | $18,808 | $185,458 | $720 |
| **Totals** | - | **$4,339,605** | **$2,518,099** | **$1,814,634** | **$354,634** |

3.   FBARs: Ghafoor failed to file FBARs which would show his income earned abroad.

Although Ghafoor disclosed the existence of his foreign bank accounts on his tax returns, he failed to file FBARs that would alert the IRS to the existence of unreported foreign income.   Per the Bank Secrecy Act, a person must report information from foreign bank accounts, including the aggregate value exceeding $10,000.  Because he failed to file the FBAR, he effectively concealed the amount of taxable foreign income.

C.   3553(a)(1), the History and Characteristics of the Defendant

As mentioned before, as an attorney, Ghafoor was an officer of the Court who took an oath before a judge to uphold the laws of the United States. Moreover, he has a continuing obligation to report any dishonest conduct or crimes

to the bar.  He has not done so, and as a result now faces possible disbarment.

*Att'y Grievance Comm'n of Md. v. Ghafoor*, No. SCM-AG-0006-2025 (Md. Aug.

5, 2025).

As described *supra* § II.B., Ghafoor also apparently embezzled some of

SSF's funds that were supposed to be held in escrow.  Ex. 2, at 1-3.  After

numerous failed payments, SSF foreclosed on Ghafoor's house.  Ex. 2, at 36-44.

Therefore, Ghafoor's failure to conduct himself ethically and in accordance with

his oath to the court weighs in favor of a custodial sentence.

Further, the Defendant was convicted of a similar crime in the UAE.

According to the UAE, the UAE noted that the transactions were suspicious

because the Defendant "is a non-resident who exchanges a huge amount of foreign

currencies in cash through an exchange bureau, while he can do the same with his

current bank account(s)," which also has the effect of hiding "the source of the

funds."  Ex. 1, at 10.  It also concluded that the stated purpose of the accounts—

savings—was inconsistent with its usage because of the frequency and amount of

the transactions that were conducted.

Moreover, the only source of income reported by Ghafoor on his tax returns

is from his law firm or his wife's income.  However, Ghafoor also owned other

businesses and non-profits, including Big Venture, LLC.  Yet this company was

not included on Ghafoor's relevant tax returns for 2019 and 2020.

The Defendant was earning a comfortable living and did not need money. The only explanation for his conduct is greed. *See United States v. Shah*, 69 F.3d 538 (6th Cir. 1995) (noting the sentencing court's "comment[] on the 'rank greed' that motivated defendants to act in violation of the law and their continued efforts to conceal their wealth"). Therefore, this factor weighs in favor of a custodial sentence.

### D.    3553(a)(2), General Deterrence

1.    <u>This case will likely attract significant international media attention.</u>

Asim Ghafoor is a well-known attorney who represented high-profile clients. *See, e.g.*, Reuters, *US Lawyer Released after UAE Money Laundering Conviction*, Al Jazeera (Aug. 13, 2022). If a non-custodial sentence were rendered and reported on, it may serve as an example that repeatedly filing fraudulent documents with the IRS, **particularly by an attorney who swore an oath to a judge to uphold the law**, would have minimal penalties.

2.    <u>General deterrence is especially important in tax prosecutions, which are few in number compared to the number of violations.</u>

General deterrence for tax crimes has taken on renewed importance in the current political climate. Due to recent large-scale reductions in the IRS's workforce, there have been numerous news articles suggesting that the Government would not enforce tax compliance. *See, e.g.*, Brookings, *A Hamstrung IRS is a Gift to Rich Tax Cheats and a Headache for Honest Taxpayers*

15

(Mar. 6, 2025), *available at* https://www.brookings.edu/articles/a-hamstrung-irs-is-a-gift-to-rich-tax-cheats-and-a-headache-for-honest-taxpayers/.  And given the relatively low level of tax prosecutions—for example, there were **only eight** tax prosecutions in the state of Michigan during 2024—this factor weighs heavily in favor of a custodial sentence to serve as an example to would-be violators.  U.S. Sentencing Commission, *Statistical Information Packet for Fiscal Year 2024 for the State of Michigan*.[2]

The Government relies heavily on deterrence to successfully enforce the internal revenue laws—more so than many other statutes.  The reason is simple: the number of taxpayers in the United States far exceeds the number of auditors and criminal investigators available at the IRS.  Absent clear consequences, individuals such as the Defendant may decide that the benefits of cheating the tax system outweigh the risks of getting caught.  In fiscal year 2023, the IRS received 163 million individual income tax returns.  2023 IRS Data Book, Table 2.[3]  The IRS simply cannot review all tax returns for accuracy.  And due to the sheer numbers involved and limited resources, only a small portion of tax offenders are

---

[2] *Available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2024/mi24.pdf (last visited Aug. 4, 2025).

[3] *Available at* https://www.irs.gov/statistics/soi-tax-stats-irs-data-book-index-of-tables.

pursued criminally.  The IRS Criminal Investigation program initiated just 2,676

investigations of tax crimes in fiscal year 2023.  *Id*. at Table 26.  As the Eighth

Circuit noted in *United States v. Ture*, 450 F.3d 352 (8th Cir. 2006):

> Because of the limited number of criminal tax prosecutions relative to
> the estimated incidence of such violations, deterring others from
> violating tax laws is a primary consideration underlying [the
> Sentencing Guidelines]. Recognition that the sentence for a criminal
> tax case will be commensurate with the gravity of the offense should
> act as a deterrent to would-be violators.

*Id.* at 357 (quoting U.S. Sentencing Guidelines Manual ch. 2, pt. T, introductory

cmt.).

The size of the U.S. "tax gap" – that is, the difference between what is owed

and what is paid – also makes clear the need for deterrence.  The tax gap, which

was $90 billion in 1987, has since grown sixfold to $606 billion, as of the IRS's

most recent comprehensive study for tax year 2022.  *See* IRS, *IRS: the Tax Gap*

(Apr. 14, 2025) *available at* https://www.irs.gov/statistics/irs-the-tax-gap.  This tax

gap of more than half a trillion dollars, which has likely increased since the IRS

issued its study, is a staggering sum.

As in this case, tax crimes – both those involving the underreporting of

income, and those involving claims of unwarranted refunds – often go undetected

for years.  This is particularly true in international cases, which often require

lengthy engagements with foreign governments to secure records.  The Defendant

engaged in a **years-long international scheme** that was only uncovered years after

17

his crimes.  This case presents an ideal opportunity for this Court to deter other lawyers and business owners like the Defendant who would act out of greed and abuse the tax system by intentionally filing false information with the IRS.  Absent such deterrence, individuals like the Defendant may cynically decide that the benefits of noncompliance outweigh the risks of getting caught and the ensuing punishment, thus contributing to the growing U.S. tax gap.  A probationary sentence would send the wrong message: that failing to comply with environmental and tax obligations is merely a strategic business decision.  *See United States v. Engle*, 592 F.3d 495, 501 (4th Cir. 2010) ("[T]he policy statements issued by the Sentencing Commission make it clear that the Commission views tax evasion as a serious crime and believes that, under the pre-Guidelines practice, too many probationary sentences were imposed for tax crimes").

### E.      3553(a)(2), Specific Deterrence

The need for specific deterrence is apparent because he has already been dishonest to another court by failing to uphold his oath as a lawyer.  Furthermore, despite having represented clients that had been designated terrorists and being in the public eye by representing high-profile individuals, he still engaged in unlawful conduct.

According to the Maryland Code, Business Occupations & Professions, § 10-212, every lawyer barred in the state of Maryland is required to:

18

. . . take the following oath or affirmation in open court:

I do solemnly (swear)(affirm) that I will at all times demean myself fairly and honorably as an attorney and practitioner at law; that I will bear true allegiance to the State of Maryland, and support the laws and Constitution thereof, and that I will bear true allegiance to the United States, and **that I will support, protect and defend the** Constitution, **laws** and government thereof as the supreme law of the land; **any law, or ordinance of this or any state** to the contrary notwithstanding.

The Defendant broke this oath repeatedly by filing fraudulent income tax returns year after year.  And by self-preparing his personal tax returns, he made sure that no professional tax preparer would look into his true financials.

Moreover, given that he was a high-profile lawyer with clients involved in government investigations, he should have conducted himself **more carefully**.  Yet he was undeterred.  His work for a high-profile charitable organization, SSF, did not deter him from committing financial crimes.  Therefore, given his dishonesty to the court for failing to abide by his bar oath and the fact that he was undeterred despite knowing he could be subject to greater scrutiny as a high-profile lawyer, specific deterrence weighs in favor of a custodial sentence in this case.

### F.     3553(a)(6), the Need to Avoid Unwarranted Sentence Disparities

The Government recommends that the Court sentence Defendant to 12 months' incarceration.  The Defendant devised a scheme to deceive the IRS by failing to disclose numerous domestic and international payments that would allow it to assess the correct tax liabilities.  Given Defendant's status as an officer of the

court and his oath to uphold the law, he has demonstrated a disrespect for the legal system by filing fraudulent documents with the IRS.  Given these factors, a custodial sentence is appropriate, as opposed to a probationary sentence which is normally limited to cases involving low tax losses, government cooperators, or cases that would not generate significant media attention.  Further, according to the Sentencing Commission's 2023 Sourcebook of Federal Sentencing Statistics,[4] almost 65 percent of sentences for tax offenses included some period of incarceration, with a mean custodial sentence of 22 months and a median of 15 months.

Some similar cases include:

- *United States v. Bashar Kiami*, No. 22-cr-20299 (E.D. Mi. Feb. 21, 2023): The defendant was sentenced to **8 months in prison** after pleading guilty to one count of 26 U.S.C. § 7201 that caused a loss of approximately $245,465 to the IRS.  Similar to here, the case involved the filing of false business and personal tax returns.  Information, ECF No. 1.

- *United States v. Daniella Allen*, No. 21-cr-20630 (Nov. 30, 2022): The defendant was sentenced to **6 months in prison** after pleading to one count of aiding in the filing of a false tax return, 26 U.S.C. § 7206(2), which caused a loss of approximately $158,865 to the IRS.

- *United States v. George Gilmore*, No. 19-cr-29 (D.N.J. Jan. 22, 2020): The defendant was sentenced to **12 months in prison** after being convicted of failing to pay employment taxes, 26 U.S.C. § 7202, causing a loss of approximately $355,466 to the IRS.  The defendant was an attorney who, among other things, failed to report income from his law practice.

---

[4] *Available at* https://www.ussc.gov/research/sourcebook-2023 (last visited Aug. 4, 2025).

This case is distinguishable from the following defendants that received

probationary sentences:

- *United States v. Brandon Johnson*, 20-cr-20587 (E.D. Mi. May 6, 2024):
  The defendant pleaded to two counts of filing a false tax return, 26 U.S.C.
  § 7206(1), and received a probationary sentence following the Government's
  motion for a downward departure due to defendant's substantial assistance
  to the Government.

- *United States v. Ronnie Wonsey*, No. 23-cr-20578 (E.D. Mi. Feb. 28, 2024):
  the defendant pleaded to filing a false tax return, 26 U.S.C. § 7206(1), which
  caused a tax loss of only $75,823. Furthermore, the defendant's conduct
  only involved cashing checks made out to his tree removal business. He was
  not a high-profile individual.

- *United States v. Christopher Miller*, (Nov. 7, 2023): The defendant was
  sentenced to probation after the Government's motion for a downward
  departure due to the defendant's cooperation. He had pleaded guilty to one
  count of conspiracy to defraud the IRS in violation of 18 U.S.C. § 371.

Furthermore, fashioning the Guidelines for tax offenses, the Sentencing

Commission sought not only to achieve consistent sentences for similar tax crimes,

but also to eliminate disparities in sentencing between white-collar offenses and

equally serious non-white-collar offenses. As former Justice Breyer, an original

member of the Sentencing Commission, explained:

> The Commission found in its data significant discrepancies between
> pre-Guideline punishment of certain white-collar crimes, such as fraud,
> and other similar common law crimes, such as theft. The Commission's
> statistics indicated that where white-collar fraud was involved, courts
> grant probation to offenders more frequently than in situations
> involving analogous common law crimes; furthermore, prison terms
> were less severe for white-collar criminals who did not receive
> probation. To mitigate these discrepancies, the Commission decided to

21

require short but certain terms of confinement for many white-collar offenders, including tax, insider trading, and antitrust offenders, who previously would have likely received only probation.

Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L. Rev. 1, 20 (1988).  Accordingly, given the Defendant's conduct, this factor weighs in favor of a 12-month custodial sentence.

## III.   RESTITUTION

As stated above, the parties agreed as to restitution in the amount of $354,634.  Plea Agreement at 12-13 ¶ 8.E. The Government's calculation was based on deposits into Ghafoor's accounts that were corroborated as income through witness interviews, and the addition of unclaimed business expenses provided by Ghafoor's attorney.  The Government therefore request an order of restitution in the amount of $354,634 payable to the IRS.

## IV.   CONCLUSION

For the above reasons, the Government recommends that the Court impose a sentence of 12 months in prison.  The Government also requests an Order of Restitution in the amount of $354,634 in favor of the IRS.

Respectfully submitted,

LARRY J. WSZALEK
Acting Deputy
Assistant Attorney General
for Criminal Matters
U.S. Department of Justice

Tax Division

By: *Richard J. Kelley*
RICHARD J. KELLEY
Trial Attorney
U.S. Department of Justice
Tax Division
(202) 616-5555
Richard.J.Kelley@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2025, a copy of the foregoing document was filed via the CM/ECF system.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

I also certify that on October 14, 2025, I caused a copy of this document to be mailed to the Court at the following address:

> Judge Susan K. DeClercq
> Theodore Levin U.S. Courthouse
> 231 W. Lafayette Blvd., Room 248
> Detroit, MI 48226

> By:  *Richard J. Kelley*
> RICHARD J. KELLEY
> Trial Attorney
> U.S. Department of Justice
> Tax Division