## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

    Plaintiff,

                                      Case No. 25-cr-20296

-v-                                  Hon. Susan K. DeClercq

ASIM GHAFOOR,

    Defendant.

| Richard J. Kelley | Edward A. Bajoka |
|---|---|
| Assistant U.S. Attorney | Samantha M. Baker |
| U.S. Department of Justice Tax Division | Attorneys for Mr. Ghafoor |
| P.O. Box 972 | Bajoka Law Group, PLLC |
| Ben Franklin Station | 500 Griswold Street, Suite 1630 |
| Washington, DC 20044 | Detroit, MI 48226 |
| 202.598.3280 | 844.422.5652 |
| Richard.j.kelley@usdoj.gov | bajokalaw@gmail.com |
| | sbaker@bajokalaw.com |

## SENTENCING MEMORANDUM

Asim Ghafoor pled guilty to filing a false tax return for the year 2016 in violation of 26 U.S.C. §7206(1). His sentencing guideline range is 12 to 18 months. However, this Court cannot "presume that a sentence within the applicable Guidelines range is reasonable." While the Court "must give serious consideration to the extent of any departure from the Guidelines and must explain [its] conclusion that an unusually lenient or an unusually harsh sentence is appropriate," the circumstances for a sentence outside the Guidelines need not be "extraordinary." *Gall v. United States*, 552 U.S. 38, 46-47; 128 S. Ct. 586; 169 L. Ed. 2d 445 (2007). In

determining the appropriate sentence, the Court must "consider every convicted person as an individual and every case a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensure." *Id.* at 52. Mr. Ghafoor respectfully asks this Court to impose a noncustodial sentence, which is sufficient but not greater than necessary, in accordance with 18 U.S.C. §3553(a).

<u>APPLICATION OF THE SENTENCING FACTORS</u>

### I.     Asim Ghafoor's History and Characteristics

Asim is a 55-year-old Muslim American who "lives by a simple principle: if you can help, you should, without expecting anything in return." (**Exhibit A: Letters of Support at 2**). Professionally, he has dedicated much of his life to protecting the rights of others, even when it meant opposing powerful governments. Personally, he is a pillar of his community and his family, providing a constant source of support, encouragement, and kindness to those around him.

Asim is married to Ebtehaj Khan and they have three children: Noor, Bilal, and Haani. Ebtehaj describes him as a devoted husband who "consistently puts others' needs before his own" and never hesitates to open his home to family, friends, and community members. (*Id.*). He has been an inspiration to his daughter, Noor, who is following in his footsteps as a Legislative Aide in Virginia. (*Id.* at 5). His son, Bilal, recognizes that his value for community involvement and volunteering was

instilled by Asim. (*Id*. at 8). Asim's colleagues know him as a "tireless advocate" to those who are wrongly accused. (*Id*. at 11).

### a. *Asim's Career and Philanthropy*

In June 1997, shortly after finishing law school, Asim obtained a position in Washington, D.C. as chief of staff and legislative assistant to congressman Ciro D. Rodriguez. Two years later, he became a licensed attorney in Maryland.

Within a few years of practice, Asim realized that civil rights work was his calling. In 2002, he represented multiple Saudi charities who were sued by victims of 9/11. He has represented Muslim American civic associations, Islamic banks and charities, the Republic of Sudan, and well-known individuals from the middle east. He represented his friend, Jamal Khashoggi, a prominent Saudi journalist who advocated for democracy in the middle east.

In 2011, a group of Syrian doctors and businessmen in Michigan wanted to create a nonprofit to send money for humanitarian aid to Syria and to Syrian refugees in Jordan, Lebanon, and Turkey. Asim assisted them in incorporating the Syrian Sunrise Foundation, Inc. ("SSF"), later known as Sunrise USA, which raised and donated over $6 million in just two years. In 2012, SSF began having trouble transferring money overseas and depositing money into its accounts. To assist the charity, Asim offered the funds to be paid to them or their vendors overseas, but SSF demanded that the money be returned to it. The dispute was resolved civilly.

In September 2017, the UN General Assembly Meeting was taking place in New York City and representatives from the UAE were expected to attend. Asim placed an ad in Times Square that linked to a film about human rights abuses in the UAE. He placed similar ads in the New York Times and the Washington Post.



In 2018, Asim's friend, Jamal, started a nonprofit organization to promote democracy in the middle east called Democracy for the Arab World Now ("DAWN"). Asim served on the board of that organization. In October 2018, Jamal was murdered and dismembered by Saudi agents at the Saudi consulate in Istanbul.[1]

---

[1] *Jamal Khashoggi: All you need to know about Saudi journalist's death.* BBC NEWS (Feb. 24, 2021) https://www.bbc.com/news/world-europe-45812399 .

Asim subsequently represented Jamal's fiancée in a lawsuit against the Saudi Crown Prince for Jamal's murder.

### b.   Asim's relationship with the United States government

Before 9/11, Asim was one of the few Muslim individuals active on Capitol Hill. In 2001 and 2002, he facilitated numerous meetings between Muslim leaders and then-President Bush, senior officials of the Bush administration, and congressional leaders before transitioning his practice to primarily civil rights work, which, at times, was in opposition to the United States government.

In 2002, President Bush signed an order authorizing the National Security Agency ("NSA") to warrantlessly wiretap calls and intercept communications of persons or entities suspected of being linked to Al Qaeda. He called it the Terrorist Surveillance Program. In 2004, Asim's client, a Saudi Charity called Al-Haramain Islamic Foundation, became a target of the NSA. Rather than obtaining a warrant to eavesdrop on the organization's communications, the NSA wiretapped the phones of members of the organization and their attorneys, including Asim. Asim filed and won a lawsuit challenging the government's unlawful actions.[2]

In 2014, Asim again learned that the government had been secretly spying on him when former NSA contractor, Edward Snowden, leaked NSA files showing the

---

[2] Martha Neil, *Feds Must Pay Islamic Charity Lawyers and Their Counsel $2.5M in Warrantless Wiretap Case.* ABA JOURNAL (Dec. 10, 2010). https://www.abajournal.com/news/article/govt._must_pay_lawyers_2.5m_in_case_re_illegal_wiretap_of_islamic_charity_o

government's mass surveillance operation of its own citizens. Asim was among five prominent Muslim-American citizens whose emails were being monitored warrantlessly by the NSA between 2002 and 2008.[3] The NSA has never had to answer for this unlawful invasion of privacy.

In April 2020, the United States requested assistance from the UAE with an investigation of SSF, including Asim, who represented SSF, and a board member of SSF. The United States was investigating SSF and its dealings overseas. The only thing the United States requested from the UAE was certified copies of bank records located in the UAE. The UAE did not respond to this request until November 21, 2021.

### c. The UAE Arrest and "Conviction"

On July 14, 2022, Asim was on a flight to a family wedding in Istanbul that had stopped to refuel at the Dubai International Airport. During the stop, plain-clothed Emirati agents accosted him at the boarding gate and threw him in a van with no explanation. Asim, who was still serving on the board of DAWN and had initiated a lawsuit against the Saudi Crown Prince, feared that he was going to suffer the same fate as his friend, Jamal Khashoggi.

---

[3] Debra Cassens Weiss, *Two Muslim American lawyers were subject to NSA email surveillance, report says.* ABA JOURNAL (July 10, 2014). https://www.abajournal.com/news/article/two_muslim_american_lawyers_were_subject_to_nsa_email_surveillance_report_s

When news broke about Asim's arrest, the UAE portrayed it as a "mutual coordination to combat transnational crimes with the United States."[4] The United States disputed that explanation, responding that it did not seek Asim's arrest.[5] The UAE claimed that since Asim's arrest, he had been "afforded due process" and had been able to communicate with counsel. That was not true. Asim was taken to the Abu Dhabi detention center where he was blindfolded, restrained with wrist and leg shackles, and subject to a strip search. He was also denied any communication with counsel for at least two weeks.[6]

Asim eventually learned that he was arrested because he had been convicted in absentia of money laundering and tax evasion in the UAE. He was never notified of the charges, did not have the opportunity to be heard in court, and did not have a right to counsel. Prior to his arrest, he was sentenced to three years in prison. The only way for Asim to defend himself was to appeal his conviction. The appellate court upheld the conviction, but vacated his prison sentence and ordered him to pay a $1.36 million fine to be released.

---

[4] Allie Malloy, et al, *Ex-Khashoggi lawyer sentenced to 3 years in prison by UAE court, state media says*. CNN (July 16, 2022). https://www.cnn.com/2022/07/16/politics/khashoggi-lawyer-detained

[5] Isabel Debre, *US disputes UAE's explanation of Khashoggi lawyer arrest*. THE ASSOCIATED PRESS (July 18, 2022). https://apnews.com/article/middle-east-crime-arrests-united-states-dubai-7db45366c3d89d9e50f3be79ba29c9e2

[6] *Beyer Remarks At Press Conference to Advocate for U.S. Citizen Asim Ghafoor Following His Arrest in the UAE*. UNITED STATES HOUSE OF REPRESENTATIVES (July 28, 2022) https://beyer.house.gov/news/documentsingle.aspx?DocumentID=5659

This Court should not consider the "facts" underlying these convictions to be true. Asim was not aware of any charges, let alone any convictions, until he was kidnapped from the plane by Emirati agents. During the "trial," the UAE prosecutor presented an uncontested version of facts while Asim was denied the opportunity to be present, be represented by counsel, face the witnesses against him, call witnesses on his behalf, or otherwise defend himself. The "facts" underlying a conviction obtained in this manner by a government that publicly lied about the case[7] can hardly be considered reliable. The UAE court system is a mockery of justice riddled with due process violations and a biased judiciary.[8]

## II.   The Nature and Circumstances of the Offense

Mr. Ghafoor was charged in a one-count Information with filing a false tax return for the year 2016. He pled guilty to that charge and admitted that the total tax loss for the four-year period between 2012-2016 was $354,634. Mr. Ghafoor acknowledges that he had bank accounts in various countries, but he did not engage in an "international scheme." (ECF 19, PageID.121). As the government is aware, Mr.

---

[7] Even after the United States denied any role in Asim's arrest, the UAE released another statement claiming this was part of a joint operation. *UAE Embassy Statement on Case of Asim Ghafoor*, Embassy of the UAE (Aug. 8, 2022) https://www.uae-embassy.org/news/uae-embassy-statement-case-asim-ghafoor

[8] Louise Price et. al., *The need for attention to human rights violations in the UAE's judiciary: Unfair mass trials, terrorism charges against civil society, life sentences for free expression and more.* BHRC (Aug. 1, 2024). https://barhumanrights.org.uk/bhrc-in-brief-the-need-for-attention-to-human-rights-violations-in-the-uaes-judiciary-unfair-mass-trials-terrorism-charges-against-civil-society-life-sentences-for-free-expression/

Ghafoor represented people in different countries and banks in the United States were not always willing to accept funds from certain countries.

The tax returns of Mr. Ghafoor's client, SSF, as well as whether he violated his oath of admission are irrelevant to the offense on which this Court will sentence him. The government extensively investigated SSF and no charges were ever brought. The government acknowledged that it is not certain that Mr. Ghafoor even completed SSF's tax returns. (ECF 19, PageID.115, n.1). The government's focus on whether Asim violated his oath of admission is misplaced, as this is not a disciplinary hearing and the Bar of Maryland will resolve that.

### III. The Need for the Sentence to Reflect the Seriousness of the Offense, Provide Adequate Deterrence, Protect the Public, and Rehabilitate Asim Ghafoor.

Media interest cannot justify a custodial sentence. An understaffed government agency cannot justify a custodial sentence. A limited number of prosecutions cannot justify a custodial sentence. Although Mr. Ghafoor's guideline range is 12 to 18 months, a custodial sentence is far greater than necessary to achieve the sentencing goals.

Mr. Ghafoor agrees that tax offenses are serious crimes, which is why, shortly after his return to the United States, he began working with the government to resolve this case. Mr. Ghafoor made some mistakes in an otherwise outstanding lifetime of advocacy and accomplishments. His willingness to reach resolution with

the government, rather than force it to waste time and resources securing an indictment, demonstrates his genuine effort to take responsibility and make amends for his conduct. A noncustodial sentence would encourage that effort. It would also be in the best interests of both parties, as Mr. Ghafoor would be able to maintain his employment and make restitution payments.

The government asks this Court to incarcerate Mr. Ghafoor primarily to deter other potential violators.  Severity of punishment is only one theory of deterrence, but it is not the most effective. Rather, "the certainty of apprehension, not the severity of the ensuing consequences, is the more effective deterrent."[9] In other words, identifying and swiftly apprehending violators is more effective than imposing an unnecessarily harsh sentence on Mr. Ghafoor. The government implies that it is unable to do so because of its staffing shortages, as allegedly evidenced by the low number of prosecutions for tax violations in Michigan last year. (ECF 19, PageID.120). However, eight prosecutions is not an abnormally low number for this offense in this state. Sentencings for defendants whose primary guideline is §2T1.1, titled "Tax Evasion; Willful Failure to File Return, Supply Information or Pay Tax; Fraudulent or False Returns, Statements or Other Documents," have remained

---

[9] Daniel S. Nagin, et al, *Deterrence, Criminal Opportunities, and Police.* 53 AMERICAN SOCIETY OF CRIMINOLOGY 1, 75 (2015) (citation omitted).

consistent nationally for the last four years.[10] Similarly, the number of sentencings in Michigan per year have consistently remained in the single digits since 2019.[11]

Neither specific deterrence, public protection, nor rehabilitation weigh in favor of a custodial sentence. Evidence of a defendant's self-motivated rehabilitation "lends strong support to the conclusion that imprisonment [is] not necessary to deter [the defendant] from engaging in future criminal conduct or to protect the public from his future criminal acts." *Gall*, 552 U.S. at 59. Additionally, "a court's duty is always to sentence the defendant as he stands before the court on the day of sentencing." *Pepper v. United States*, 562 U.S. 476, 492 (2011). Mr. Ghafoor is admittedly facing action by the Bar of Maryland, but the basis of that action is related to this offense. In the last eight years since this offense occurred, Mr. Ghafoor has continued to advocate for those less fortunate than him, even when he feared for his own life. When he was detained in the UAE, he gave money to others who were jailed due to their inability to pay fines. (Exhibit A at 3). When he returned home, he quickly found a job so that he could continue supporting his family. Upon learning of this investigation, he, through counsel, reached out to the government to work out an agreement. He has not had any issues with his tax filings since this incident. To mitigate the risks associated with self-employment, he accepted an

---

[10] United States Sentencing Commission Interactive Data Analyzer for Primary Guideline §2T1.1 https://ida.ussc.gov/analytics/saw.dll?Dashboard (accessed Oct. 17, 2025)
[11] *Id.*

employee position even though he is away from his family during the work week. Mr. Ghafoor's efforts to rehabilitate himself show that a prison sentence is unnecessary.

IV.  **The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.**

The need to avoid unwarranted sentencing disparities suggests that some sentencing disparities are warranted, even when defendants have similar records for similar offenses. It is not an abuse of discretion for a sentencing court to conclude that the advisory guideline range results in a sentence that is disproportionate, i.e., greater than necessary to achieve the goals of §3553(a), even in a "mine-run case." *Rita v. United States*, 551 U.S. 338, 351 (2007) (citation omitted).

In its memorandum, the government distinguished Mr. Ghafoor's case from three other defendants who had received below-guidelines sentences because those defendants had cooperated with the government. However, courts in the Eastern District of Michigan have imposed below-guideline, probationary sentences for similar or even more egregious conduct without evidence of cooperation in the following cases:

- *United States v. Nathan*, No. 21-cr-20551 (E.D. Mich., Feb. 25, 2022): Nathan was a tax preparer who falsified information on her clients' tax returns on at least 132 occasions between 2011 and 2017 resulting in a loss amount of <u>$736,065</u>. (ECF 21, PageID.122). She pled guilty to one count of filing false tax returns for herself and one count of aiding and assisting in the preparation of false returns. (ECF 23). Her guideline range was 30-37 months. (ECF 22,

PageID.133). Judge Roberts sentenced her to three years of probation. (ECF 23).

- *United States v. Paruthi*, No. 22-cr-20294 (E.D. Mich., May 4, 2023): Paruthi was a tax preparer who was indicted on seven charges related to falsifying tax returns. (ECF 33, PageID.183). He pled guilty to one count of failing to file a tax return with a loss amount between **$250,000 and $550,000**. (ECF 22). His guidelines would have been 18-24 months, but the maximum penalty for the offense was one year. (ECF 33, PageID.189). Judge Murphy sentenced him to three years of probation. (ECF 35, PageID.200).

- *United States v. Jones*, No. 23-cr-20224 (E.D. Mich., Dec. 23, 2024): Jones was a tax preparer who filed false returns for her clients in which she lied about incomes and losses, charitable contributions, and childcare expenses because the "money was good." (ECF 24, PageID.143-44). The loss amount was over $120,000. (*Id.*). She pled guilty to **four counts** of aiding in filing false tax returns (ECF 179) and her guideline range was 12-18 months (ECF 24, PageID.144). Judge Cox sentenced her to three years of probation. (ECF 27).

Mr. Ghafoor's actions were less egregious than these defendants, all of whom were sentenced to probation. He was not a trained tax professional, did not file hundreds of false returns, and is not convicted of multiple counts of filing false returns. Mr. Ghafoor cooperated with this investigation and negotiated a resolution in this case without requiring the government to expend resources to seek an indictment. He has spent his life giving back to his community and advocating for people who are unfairly targeted. This offense was a mistake in an otherwise exemplary life of leadership, courage, and kindness, and does not warrant a custodial sentence.

## CONCLUSION

Asim Ghafoor respectfully requests this Court impose a noncustodial sentence which is sufficient but not greater than necessary to accomplish the sentencing goals.

<div style="margin-left:40%">

Respectfully submitted,

Samantha M. Baker
Bajoka Law Group, PLLC
BY: SAMANTHA M. BAKER
**Edward A. Bajoka**
Attorneys for Mr. Ghafoor
500 Griswold Street, Suite 1630
Detroit, MI 48226
844.422.5652

</div>

Dated: October 21, 2025